**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

ELLA FELVER,                                :

                    Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.           :

Case No. 3:07-cv-247

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520 .  First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged

2

in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

   Plaintiff filed an application for SSD on October 15, 2003, alleging disability from November 5, 2002, due to a shoulder impairment, irritable bowel syndrome, gastroesophageal reflux disorder ("GERD"), asthma, and vertigo. (Tr. 56-58; 66-73). Plaintiff's application was denied initially and on reconsideration. (Tr. 36-39; 41-44). A hearing was held before Administrative Law Judge Thomas McNichols, (Tr. 367-418), who determined that Plaintiff was disabled as of September 30, 2005, but not before. (Tr. 15-30). The Appeals Council denied Plaintiff's request for review, (Tr. 5-8), and Judge McNichols' decision became the Commissioner's final decision.

   In determining that Plaintiff is not disabled, Judge McNichols found that Plaintiff met the insured status requirement of the Act through December 31, 2005. (Tr. 24, ¶ 1). Judge McNichols also found that Plaintiff has severe chronic neck and back pain attributed to degenerative disc disease, or alternatively myalgia or myositis, intermittent left shoulder pain, irritable bowel

3

syndrome and GERD, multiple chemical sensitivities with asthma, and depression, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id.,* ¶3; Tr. 25, ¶ 4.  Judge McNichols then found that Plaintiff has the residual functional capacity for a limited range of sedentary work.  (Tr. 26, ¶ 5).  Judge McNichols found further that prior to September 30, 2005, the date that Plaintiff's age category changed, using section 201.21 of the Grid as a framework for deciding coupled with a vocational expert's (VE) testimony, there was a significant number of jobs in the economy that Plaintiff was capable of performing.  (Tr. 29, ¶ 10). Judge McNichols then found that beginning on September 30, 2005, the date Plaintiff's age category changed, section 201.14 of the Grid directed a finding of disabled.  *Id.*, ¶ 11.  Judge McNichols concluded that Plaintiff was not disabled prior to September 30, 2005, but that she became disabled on that date pursuant to the application of the relevant regulations.  (Tr. 30, ¶ 13).

The record reveals that Plaintiff has a history of several illnesses including chronic neck and back pain, myofascial pain syndrome, whiplash syndrome, kyphosis, scoliosis, shoulder pain, asthma, allergies, depression, peptic ulcer disease, chronic dyspepsia, gastritis, and gastric ulcers. *See, e.g.,* Tr. 157-85; 216-23; 225-27; 229-41.  In addition, Plaintiff has been diagnosed with major depression, recurrent, severe, without psychotic features, prolonged post-traumatic stress reaction, and psychological factors affecting physical condition. *See,* Tr. 130-32.

Plaintiff received treatment for her complaints of pain from Dr. Black during the period January 7, 2003, through May 12, 2004.  (Tr. 157-85).  During that period of time, Dr. Black noted that Plaintiff was deconditioned, had pain in the entire shoulder girdle on the left, and pain in her neck and back on palpation. *Id.* Dr. Black also noted that over time, Plaintiff's range of shoulder motion improved, but that it remained significantly decreased. *Id.*

Plaintiff treated with orthopedic surgeon Dr. Case during the period January, 2003, through May, 2004. (Tr. 194-218). In March, 2004, Dr. Case performed a left-sided arthroscopic subacromial decompression, arthroscopic glenohumeral joint arthroscopy with extensive debridement, arthroscopic capsular relief, manipulation under anesthesia, and insertion of a pain pump. *Id*. A week after undergoing the surgery, Plaintiff was hospitalized for treatment of opiate withdrawal symptoms. *Id.* Plaintiff was subsequently evaluated for a physical therapy program in which she participated for nine (9) visits. *Id.*

Plaintiff was hospitalized in September, 2004, after experiencing an episode of left-sided face, neck, and left upper extremity numbness and weakness. (Tr. 255-75). Plaintiff's evaluation was essentially negative and neurologist Dr. Kitchener's impression was a compression neuropathy of the radial nerve. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Schear Family Practice dated August, 2004, through December 2, 2005. (Tr. 276-88). While those notes are essentially illegible, it appears that Plaintiff received general medical care at that facility. *Id.*

Plaintiff consulted with pain specialist Dr. Moore who reported on September 13, 2004, that Plaintiff has had chronic musculoskeletal pain since multiple car accidents in the past, had rotator cuff repair surgery in March, 2004, was taking Methadone for pain, had chronic nausea, a recent problem with vertigo, and asthma. (Tr. 354). Dr. Moore also reported that Plaintiff had been diagnosed with fibromyalgia and claimed she had two ruptured discs in her neck with pain radiating to her arms and legs. *Id.* Dr. Moore noted that Plaintiff's shoulder seemed well resolved based on no tenderness to palpation and full range of motion of her left shoulder, that she had marked kyphosis in the thoracic spine with obvious scoliosis, her medical and neurological examinations

5

were within normal limits, and that she presented with withdrawal from narcotics. *Id.*

Plaintiff received treatment from Dr. Moore during the period September, 2004, through April, 2006. (Tr. 289-53). Over time, Dr. Moore identified Plaintiff's diagnoses as myalgia and myositis and the treatment modalities included myofascial release, analgesics, opioid analgesics, and electrical stimulus. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by finding that prior to her 50th birthday, although she was limited to no exposure to environmental irritants there were jobs in the economy that she was able to perform although the VE testified there were not, and by finding that although she needed ready access to a bathroom urgently on a repetitive basis there were jobs in the economy that she was able to perform although the VE testified there was no such work such an individual could perform. (Doc. 6). Plaintiff also alleges that the Commissioner erred by failing to give the appropriate weight to Dr. Moore's opinion as to her limitations, and by failing to find that she was capable of performing only repetitive tasks. *Id.*

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-

80.

As noted above, Judge McNichols determined that Plaintiff has the residual functional capacity for a limited range of sedentary work. (Tr. 26, ¶ 5). In addition to the exertional limitations which Judge McNichols identified, he also found that Plaintiff was restricted from, *inter alia*, "no exposure to temperature extremes, humidity, or irritants." *Id.* On cross-examination by Plaintiff's counsel, the VE essentially testified that considering the other limitations which Judge McNichols described, if one were required to avoid exposure to irritants (*e.g.,* fumes, odors, dusts, gasses, and poor ventilation), there were no jobs in the economy which the person could perform. (Tr. 411-12). Under these circumstances, specifically, in view of Judge McNichols' findings as to Plaintiff's residual functional capacity and the VE's testimony, the Commissioner erred by finding that prior to age 50, there was a significant number of jobs in the economy which Plaintiff was able to perform. Therefore, the Commissioner's decision that Plaintiff was not disabled prior to September 30, 2005, is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits. Specifically, as noted above, when the VE considered all of the limitations which the Commissioner determined Plaintiff has, the VE testified that there were no jobs in the economy which Plaintiff could perform. Accordingly, the Commissioner's decision that Plaintiff was not disabled prior to September 30, 2005, should be reversed.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

March 14, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).